# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
### 1:09cv296

| | |
|---|---|
| **DENISE ANDERSON MATHIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **Vs.** | )    **MEMORANDUM AND** |
| | )    **RECOMMENDATION** |
| **TOWN OF WAYNESVILLE, NC;** | ) |
| **MICHAEL BONFOEY; JAMES** | ) |
| **H. MOORE, JR.; and TYLER** | ) |
| **TRANTHAM,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

THIS MATTER is before the court upon defendants Michael Bonfoey's and James H. Moore, Jr.'s (hereinafter the "state prosecutors") Motion to Dismiss (#3) and defendants Tyler Trantham's and the Town of Waynesville's (hereinafter "the town") Motion to Dismiss (#5).  Plaintiff has filed a response to both motions (see Docket Entries ## 7 and 8) and the town defendants have filed a reply.  Docket Entry #9.[1]  Having considered those pleadings as well as the Complaint, the undersigned enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

---

[1]    The state prosecutor defendants neither replied nor filed a notice of no reply.  See L.Cv.R. 7.1(E).

## I.     Nature of the Action and the Motion to Dismiss

In this action brought under 42, United States Code, Section 1983, plaintiff contends that she was wrongfully prosecuted by defendants and that such wrongful prosecution violated federally protected rights.  The state prosecutor defendants have moved to dismiss, pursuant to Rule 12(b)(1), arguing that this court lacks jurisdiction over the subject matter of this action, inasmuch as plaintiff asks this federal court to impose money damages upon the State of North Carolina.  The state prosecutor defendants also move to dismiss this action under Rule 12(b)(6) arguing that plaintiff has failed to state a claim as they enjoy immunity from prosecution.  The town defendants have moved to dismiss under Rule 12(b)(6).

While all factual allegations of the Complaint have been accepted as true for the purpose of the pending motions, the facts relevant to the instant motions can be briefly summarized.  Plaintiff asserts she was charged with embezzlement by a grand jury following an allegedly inadequate investigation by both the town defendants (the individual defendant was the investigating detective) and the state prosecutor defendants.  There are no allegations that any defendant falsified information or that the detective acted in accordance with any unlawful policy or procedure of the town.  Rather, plaintiff's core allegation is that neither the state prosecutor nor the detective properly considered the report made by a forensic accountant hired by the Haywood

County Council on Aging, Inc., plaintiff's former employer, after the indictment was handed down, which explained why the alleged criminal conduct of the plaintiff was, in fact, legal. It is undisputed that the state prosecutor defendants dismissed the charges prior to trial.

In this Section 1983 action, plaintiff seeks to recover the costs associated with her criminal defense as well as damages for emotional harm and loss of reputation. She has alleged the following claims:

(1)    Count One: Malicious Prosecution Under 42 U.S.C. 1983, asserted against Defendants Bonfoey, Moore, and Trantham;

(2)    Count Two: Conspiracy Violation of 42 U.S.C. 1983, asserted against Defendants Bonfoey, Moore, and Trantham;

(3)    Count Three: Making False Statements in Violation of 42 U.S.C. 1983, asserted against Defendants Bonfoey, Moore, and Trantham;

(4)    Count Four: Supervisory Capacity Claim Under 42 U.S.C. § 1983, asserted against defendant town; and

(5)    Count Five: Conspiracy Claim Under 42 U.S.C. § 1985, asserted against all defendants.

For the reasons discussed below, none of these claims are viable as a matter of well settled law and the undersigned is compelled to recommend their dismissal.

## II.    Applicable Standards

### A.    Rule 12(b)(1) Standard

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit.  Lack of subject-matter jurisdiction may be raised  at any time either by a litigant or the court.  <u>Mansfield, C. & L.M.R. Co. v. Swan</u>, 111 U.S. 379, 382 (1884).  The ability of the court to independently address subject-matter jurisdiction is important to finality inasmuch as  a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment.  <u>Capron v. Van Noorden</u>, 2 Cranch 126, 127, 2 L.Ed. 229 (1804).   The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  Fed.R.Civ.P. 12(h)(3).

When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff.  <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982).  In <u>Richmond, Fredricksburg & Potomac R.R. Co. V. United States</u>, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

In determining whether jurisdiction exists, the district court is to regard

the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir.1989).

Id., at 768-69. Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case. United States v. North Carolina, 180 F.3d 574, 580 (4th Cir. 1999).

### B. Rule 12(b)(6): Applicable Standard

Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that the plaintiffs could prove no set of facts which would support their claims and entitle them to relief. Neitzke v. Williams, 490 U.S. 319 (1989); Conley v. Gibson, 355 U.S. 41 (1957). This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Court held that the "no set of facts" standard first espoused in <u>Conley</u>, <u>supra</u>, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." <u>Id.</u>, at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." <u>Id.</u>, at 561 (alteration in original).

Post <u>Twombley</u>, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in his complaint that "raise a right to relief above the speculative level." <u>Id.</u>, at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

<u>Id.</u> (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." <u>Id.</u>, at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." <u>Id.</u>, at 570 (emphasis added).

While the Court was clear in <u>Twombly</u> that <u>Conley</u> was no longer controlling,

see Twombly, 550 U.S. at 563, and Felman Production Inc. v. Bannai, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In Ashcroft, the Court held that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint fall short of the plausibility standard where plaintiff "pleads facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court accepts plausible factual allegations made in the Complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

As reflected above in the discussion of the allegations of the Complaint herein, the court has accepted as true all of the factual allegations contained in the Complaint, and, as well, has identified "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft, supra, at 1950. As reflected below, the court has assumed the veracity of any well-pleaded factual allegations "and [will] then determine whether they plausibly give rise to an entitlement to relief." Id. (alteration added).

## III.    Rule 12(b)(6) Motions to Dismiss

### A.    Count One: Malicious Prosecution Under 42 U.S.C. 1983, Asserted Against Defendants Bonfoey, Moore, and Trantham.

In count one, plaintiff contends that she was subjected to malicious prosecution in violation of her fourth and fourteenth amendment rights. Compl., at ¶ 57. The Court of Appeals for the Fourth Circuit has made it "clear that there is no such thing as a '§ 1983 malicious prosecution' claim." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). Inasmuch as "[a] subject of a criminal investigation does not have a constitutional right to have a criminal investigation performed in a desired manner," Bernstein v. United States., 990 F.Supp. 428, 437 (D.S.C. 1997), plaintiff at most can allege that the prosecutors and the detective negligently investigated the allegations levied against plaintiff by the United Way of Haywood County or the Haywood

County Council on Aging, Inc. Accepting that such could be true, negligence simply cannot form the basis of a Section 1983 claim, as such statute was created to provide a remedy for intentional deprivations of federally protected rights. <u>Daniels v. Williams</u>, 474 U.S. 327 (1986). The decision in <u>Daniels</u> is particularly instructive as the Court there was also presented with a claim that the negligent acts of a state actor violated the fourteenth amendment:

> The Fourteenth Amendment is a part of a Constitution generally designed to allocate governing authority among the Branches of the Federal Government and between that Government and the States, and to secure certain individual rights against both State and Federal Government. When dealing with a claim that such a document creates a right in prisoners to sue a government official because he negligently created an unsafe condition in the prison, we bear in mind Chief Justice Marshall's admonition that "we must never forget, that it is a constitution we are expounding," *McCulloch v. Maryland*, 4 Wheat. (17 U.S.) 316, 407, 4 L.Ed. 579 (1819) (emphasis in original). Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society. We have previously rejected reasoning that " 'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States,' " *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976), *quoted in Parratt v. Taylor*, 451 U.S., at 544, 101 S.Ct., at 1917.

<u>Id.</u>, at 332. While the wrong alleged here is certainly more compelling than a slip and fall tort, Section 1983 simply was not intended to be a mechanism for taking what at most would be a common law tort for negligent prosecution (if there is such a tort)

and turning it into a constitutional claim. To do so would subject every prosecutorial decision, every investigation that leads to charges, and every decision of a grand jury to be second guessed by a federal court. The division of powers among the states and the federal government, see U.S.Const. Amend. 11, certainly did not envision such review. The undersigned is compelled to recommend that plaintiff's claim for malicious prosecution in violation of her fourth and fourteenth amendment rights based on an allegedly negligent investigation be dismissed with prejudice.

**B.     Count Two: Conspiracy Violation of 42 U.S.C. 1983, Asserted Against Defendants Bonfoey, Moore, and Trantham.**

In count two, plaintiff contends that all the individual defendants conspired to maliciously prosecute her for embezzlement. She alleges that these defendants

> conspired and entered into expressed or implied agreements, understandings or meetings of the mind among themselves to deprive the Plaintiff of her Constitutional rights by charging the Plaintiff with embezzlement when the Defendants knew that there was no evidence to support the charge that the Plaintiff had embezzled anything.

Compl., at ¶ 62. Where a plaintiff fails to state a claim for the underlying wrong, "the conspiracy claim under section 1983 must fail." N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990); see also Cassettari v. Nevada County, Cal., 824 F.2d 735, 739 (9th Cir. 1987). Because a claim for malicious prosecution is not cognizable under Section 1983, a claim for conspiracy to commit malicious prosecution under Section 1983 also does not exist.

**C.     Count Three: Making False Statements in Violation of 42 U.S.C. 1983, Asserted Against Defendants Bonfoey, Moore, and Trantham**.

In count three, plaintiff contends that these defendants should be held liable for making false public statements concerning the criminal charges against her during the course of the investigation.  Compl., at ¶¶ 46, 47, 50, 70, 71, 72, 73.  Assuming that each statement alleged in the Complaint was indeed false, plaintiff's legal thesis is that where the tort of defamation is committed by a person acting under color of state law, a cause of action under Section 1983 arises.  In a similar case, the Supreme Court held in Paul v. Davis, 424 U.S. 693, 712 (1976),  that defamatory publications, standing alone, do not rise to the level of a constitutional claim, no matter how serious the harm to reputation.   In Cox v. Northern Virginia Transp. Comm'n, 551 F.2d 555, 558 (4th Cir.1976), the Court of Appeals for the Fourth Circuit held that "defamation by a state official is not a federal constitutional or statutory tort." Section "1983 cannot be used as a vehicle for asserting a claim of defamation." Wildauer v. Frederick County,  993 F.2d 369, 373 (4th Cir. 1993).

In this case, there is no allegation that the alleged defamation caused the deprivation of any governmental right, such as public employment.   Paul, supra. Indeed, it appears from plaintiff's own allegations that her employment was terminated on February 11, 2006, before the subject investigation was requested by

the United Way of Haywood County Board of Directors on February 17, 2006, Compl.., at ¶¶ 32, 34. On the face of the pleadings, plaintiff cannot allege a Section 1983 claim founded on defamation.

**D.     Count Four: Supervisory Capacity Claim Under 42 U.S.C. § 1983, Asserted Against Defendant Town.**

In plaintiff's fourth claim, she contends that the town is liable for failing to properly supervise an allegedly negligent investigation conducted by its detective. She contends that the town officials failed to satisfy their obligation to assure the embezzlement investigation was fully and fairly conducted. Compl., at ¶¶ 80-84. This lack of oversight allegedly rose to the level of "deliberate indifference." Compl., at ¶ 85.

The doctrine of *respondeat superior* is generally inapplicable to Section 1983 suits. Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978); Rizzo v. Goode, 423 U.S. 362 (1976); Lopez v. Robinson, 914 F.2d 486 (4th Cir. 1990); Ross v. Reed, 719 F.2d 689, 698-99 (4th Cir. 1983); and Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977). Liability attaches to a municipality only if the alleged wrongful conduct directly causing the constitutional deprivation is undertaken to effectuate the official policy or custom of the town. Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982). A town may be liable for acts of its

employees if the town is aware of a *pervasive*, unreasonable risk of harm from a specified source and fails to take corrective action as result of deliberate indifference or tacit authorization. <u>Slakan v. Porter</u>, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985). Alleging one failure on one occasion is insufficient to establish a town policy or custom. Thus, under <u>Twombley</u> plaintiff has failed to assert sufficient plausible allegations to state a Section 1983 claim against the town for its alleged failure to supervise its detective. Finally, inasmuch as there is no plausible underlying claim against the detective, there can be no claim against his employer deriving therefrom. The town is entitled to the Rule 12(b)(6) dismissal it seeks.

### E.  Count Five:  Conspiracy Claim Under 42 U.S.C. § 1985, Asserted Against All Defendants.

In addition to a conspiracy claim under Section 1983, <u>supra</u>, plaintiff has also alleged a conspiracy claim against all defendants under Section 1985; however, she has not specified under which of the three subsections of Section 1985 her claim is made. In relevant part, plaintiff alleges in Count Five of her Complaint that

> 91. Under color of State law, the Defendants conspired and entered into express and/or implied agreements, understandings or meetings of the minds among themselves for the purpose of not completing a full and fair investigation into the matters surrounding the alleged embezzlement of funds from the Council on Aging for purpose of depriving, either directly or indirectly, the Plaintiff of the equal protection of the laws and privileges and immunities under the laws.
>                                    * * *

95. As a further consequence to these deprivations, the Plaintiff was required to retain counsel in the criminal proceedings pursued against her, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by the Defendants.

Compl., at ¶¶ 91 & 95. Such allegations appear to be a restatement of plaintiff's Second Cause of Action for a Section 1983 conspiracy and as such would be subject to dismissal for the same reasons discussed above. Assuming that plaintiff is attempting to assert a Section 1985 conspiracy claim, the court has reviewed each subsection of Section 1985.

Subsection (1) addresses a conspiracy to keep a person from accepting or holding an office, which does not apply to this case inasmuch as plaintiff had been removed from her office prior to the commencement of this action and there is no allegation that these defendants prevented her accepting any office. 42 U.S.C. § 1985(1). Subsection (1) has not been invoked.

Subsection (2) addresses a conspiracy to obstruct justice or intimidate witnesses or jurors. While this subsection speaks to conspiracies to "influence the verdict, presentment, or indictment of any grand or petit juror," 42 U.S.C. § 1985(2), plaintiff has made no allegations that any grand juror was tampered with or unlawfully influenced; rather, plaintiff's allegation in this claim is that defendants failed to "complet[e] a full and fair investigation into the matters," which at most would be an

allegation that the grand jury issued a true bill based upon information derived from a negligently conducted investigation. Such allegations could not plausibly be the basis for finding that defendants conspired to tamper with or improperly influence a grand jury.

Subsection (3) deals with conspiracies to deprive persons or classes of persons of federally protected rights based on some protected class such as race, gender, or religion, otherwise known as "invidious discriminatory animus." See Smith v. Tolley, 960 F.Supp. 977, 981 n.2 (E.D.Va. 1997). To allege a Section 1985(3) cause of action, plaintiff must make plausible factual allegations as to each of the following essential elements:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. Moreover, the law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights.

Simmons v. Poe, 47 F.3d 1370, 1376-77 (4th Cir.1995) (citations omitted). In this case, plaintiff's claim fails from the outset as she has failed to allege that these defendants were "motivated by a specific class-based, invidiously discriminatory animus . . . ." Id. Inasmuch as Section 1985(3) appears to be the most applicable

provision of Section 1985, and it further appearing that plaintiff has not made a plausible allegation to support the second essential element of such claim, the undersigned must recommend that this claim be dismissed.

## IV.    Rule 12(b)(1) Motion to Dismiss

While the state prosecutor defendants are entitled to dismissal of all of the claims asserted against them under Rule 12(b)(6), they also contend this action has been improperly brought against them as the State of North Carolina enjoys immunity from suit for money damages in federal court under the eleventh amendment.

> The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend. XI. Although the Eleventh Amendment, by its terms, applies only to suits brought against a state by "Citizens of another State," it is well established that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (citations omitted). *State officers acting in their official capacity are also entitled to Eleventh Amendment protection*, because "a suit against a state official in her or his official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Lytle v. Griffith, 240 F.3d 404, 408 (4th Cir.2001) (emphasis added).

The office of the District Attorney and the prosecutorial districts are provided for under Article IV, Section 18 of the North Carolina Constitution and the fact that

district attorneys and their assistants are state officials is further supported by Chapter 7A, Article IX of the North Carolina General Statutes which provides for the division of the state into prosecutorial districts and for the number of assistant district attorneys that shall be provided to each district. All of these officials salaries are paid by the state of North Carolina. In the plaintiff's Complaint, it is alleged as to the state prosecutor defendants as follows: "defendant Mike Bonfoey was, at all times relevant to this action, the District Attorney for the Thirtieth Prosecutorial District in North Carolina" and "Defendant James H. Moore, Jr. (hereinafter "Moore") was, at all times relevant to this action, an assistant district attorney with the Thirtieth Prosecutorial District in North Carolina working under Defendant Michael Bonfey (hereinafter 'Bonfey')." "Bonfoey and Moore were the district attorneys prosecuting the Plaintiff." Compl., at ¶¶ 6,7. Clearly, these defendants are public servants employed by the State of North Carolina.

Absent waiver or consent, see Moreno v. University of Md., 645 F.2d 217 (4th Cir. 1981), *aff'd*, 458 U.S. 1 (1982), the eleventh amendment bars suits directly against the state or its agencies, regardless of the nature of relief sought. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984). This bar is effective whether the state is the named party or, as in this case, is the party in fact. Scheuer v. Rhodes, 416 U.S. 232, 237 (1974).

The eleventh amendment does not bar damage awards against state officials sued in their *individual* capacities for intentional deprivations of constitutional rights under color of state law. Ex parte Young, 209 U.S. 123 (1908); Hafer v. Melo, 502 U.S. 21 (1991). The plaintiff's Complaint does not state with specificity the capacity in which the plaintiff is presenting her purported claims against the state prosecutor defendants. Based upon the allegations of the Complaint set forth above, this court has determined that the plaintiff's claims in this case are brought against the state prosecutor defendants in their official capacity only. It would further appear that an individual capacity claim against the state prosecutors would be implausible given the lack of allegations concerning any acts committed by the state prosecutors outside the course and scope of state employment.

There is also an exception to eleventh amendment immunity where the plaintiff seeks injunctive relief only. Where a suit is for declaratory or injunctive relief against a state official in his or her official capacity, in which the constitutionality of the official's action is challenged, eleventh amendment immunity does not apply. Ex parte Young, 209 U.S. 123 (1908); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989). While a court could enjoin the official's future conduct, i.e., prospective relief, it cannot issue an injunction requiring retroactive monetary relief. Edelman v. Jordan, 415 U.S. 651 (1974). Plaintiff does not seek injunctive relief and

it does not appear that the pleadings could be amended to allege any such relief as future harm to this plaintiff has not been asserted.

This court lacks subject matter jurisdiction over the Section 1983 and Section 1985 claims asserted against the state prosecutors as the action is, *eo nominee*, against the State of North Carolina, which enjoys eleventh amendment immunity from suit in this court for money damages. The undersigned will recommend that this action, in its entirety, be dismissed as to the state prosecutor defendants in their official capacity in accordance with Rule 12(b)(1).

## V.      Prosecutorial Immunity

In the plaintiff's brief, the plaintiff contends the state prosecutor defendants were named as defendants individually and not in their official capacity. Pltf's Brief, p. 10. As stated above, a reading of the Complaint and the allegations contained therein do not support such a contention. However, taking the statement in the plaintiff's brief as true and assuming that the plaintiff has brought her claims against the state prosecutors in their individual capacities, the state prosecutors have asserted that they are entitled to prosecutorial immunity which would preclude any action against either of them in such individual capacity. A prosecutor is a *quasi*-judicial officer who enjoys absolute immunity when performing prosecutorial, as opposed to investigative or administrative functions. Imbler v. Pachtman, 424 U.S. 409 (1976).

Absolute immunity is designed to protect the judicial process; however, not all actions by a prosecutor are related to an ultimate decision to prosecute. Thus, the inquiry is whether the prosecutor's actions are closely associated with the judicial process. Burns v. Reed, 50 U.S. 478 (1991). A prosecutor's participation in obtaining evidence and searching for evidence upon which to prosecute an indictment is intimately connected with the prosecution and is entitled to absolute immunity. Pachaly v. City of Lynchburg, 897 F.2d 723 (4th Cir. 1990). The Supreme Court in Imbler applied what is known as a functional approach in determining what acts of a prosecutor are entitled to absolute immunity, making prosecutorial immunity turn on the function performed by the prosecutor. Atherton v. District of Columbia Office of the Mayor, 567 F.3d 672 (D.C. Cir., 2009). Recently, the United States Supreme Court again addressed the functional approach set forth in Imbler in Kamp v. Goldstein, 129 S.Ct. 855 (2009) as follows:

> In the years since Imbler, we have held that absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, Burns, supra, at 492, 111 S.Ct. 1934, or appears in court to present evidence in support of a search warrant application, Kalina, supra, at 126, 118 S.Ct. 502. We have held that absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, see Burns, supra, at 496, 111 S.Ct. 1934, when the prosecutor makes statements to the press, Buckley v. Fitzsimmons, 509 U.S. 259, 277, 113 S.Ct. 2606, 125 L.Ed2d 209 (1993), or when a prosecutor acts as a complaining witness in support of a warrant application, Kalina, supra, at 132, 118 S.Ct. 502 (SCALIA, J.,

concurring). This case, unlike these earlier cases, requires us to consider how immunity applies where a prosecutor is engaged in certain administrative activities.

An examination of the Complaint shows that all of the actions of the prosecutor defendants were taken when they were working within the role of an advocate except when they were possibly making statements to the press. In Buckley v. Fitzsimmons, 509 U.S. 259 (1993), the Supreme Court stated that "comments to the media have no functional tie to the judicial process just because they are made by a prosecutor." Id. In the plaintiff's Complaint, the plaintiff has alleged that the state prosecutors have made "public statements." Compl., ¶¶ 71, 72. It is impossible to determine from the plaintiff's Complaint (¶¶ 46, 47, 72(a)(b)) whether the alleged "public statements" were made during the course of, or relevant to the judicial proceedings, and reported by the press and entitled absolute immunity, or if they were made during press conferences called by the state prosecutors. Press conferences made by prosecutors are not entitled to protection under absolute immunity but could be protected by qualified immunity, which will be discussed infra.

## VI.    Qualified Immunity

The state prosecutor defendants also contend that if sovereign immunity and absolute immunity do not bar the plaintiff's claims, then the state prosecutors would be entitled to qualified immunity. Defendant Trantham, a detective for the Town of

Waynesville, has also asserted qualified immunity from suit as to all of his actions. Public officials, sued in their individual capacities, are free from liability for monetary damages if they can plead and prove that their conduct did not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 815-16 (1982). In Mitchell v. Forsyth, 472 U.S. 511 (1985), the Supreme Court held that qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if the case is erroneously permitted to go to trial." Id., at 526. Qualified immunity is a question of law. Adams v. St. Lucie County Sheriff's Dept., 962 F.2d 1563, 1566-67 (11th Cir. 1992). When a defendant asserts qualified immunity, the court

> considers in the light most favorable to the plaintiff all facts fairly inferable from the record--regardless of the existence of factual disputes--and decides whether, under those facts, defendant's conduct violated law clearly established at the time.

Bennett v. Parker, 898 F.2d 1530, at 1535, n.2 (11th Cir. 1990). The Bennett court further held that such "determination, whether in the context of a Rule 56(b) or (e) motion for summary judgment, a motion to dismiss for failure to state a claim, or a motion for judgment on the pleadings, is a legal determination . . . ." Id.

If the right allegedly violated was clearly established at the time, a defendant

asserting a qualified-immunity defense may still be immune from damages for violation of that right if, under the circumstances, a reasonable official could have believed that his or her particular conduct was lawful. A court must make an objective, although fact-specific, inquiry into the legal reasonableness of the conduct. Anderson v. Creighton, 483 U.S. 635, 641 (1987). The lawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law; a defendant's motives are irrelevant to the qualified-immunity inquiry. Id. The inquiry depends upon the reasonableness of the official's perceptions, not those of the plaintiff. Gooden v. Howard County, 954 F.2d 960, 965 (4th Cir. 1992) (*en banc*).

In first addressing the allegations regarding the town defendants, the court finds there is one issue. In analyzing this issue, the first question is, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show that [Defendant Trantham's] conduct violated a constitutional right? If no, then, no further inquiry is required." Bennett, supra. The answer is simply no, as no constitutional claim arises from alleged negligence in conducting a criminal investigation. An examination of the allegations of the alleged statements made by Trantham do not support any constitutional claims. Qualified immunity applies, and the undersigned will recommend that dismissal also be granted on this basis.

In making this determination, the court has closely examined the allegations contained in the Complaint about the town defendants. In paragraph 35 it is alleged that Trantham interviewed Celesa Willett who had prepared a report after she reviewed the Haywood County Council on Aging Flood Relief bank account. Ms. Willett, in her report, had classified disbursements as either "approved" or "not approved". Id., at ¶¶ 35, 36. Later in the Complaint, it is alleged that on May 5, 2006, the state prosecutors filed a petition based on the affidavit of Trantham, Id., at ¶ 37. There is not a description of what the affidavit says, what the petition says, why a petition would have had to have been filed, or where it was filed. It is not clear if the petition contained the statement that is alleged or if the affidavit of Trantham contained the statement. The statement that was allegedly made, however, was that "no funds from the account (Haywood County Council on Aging Flood Relief Account) were to be used without prior approval of the Unmet Needs Committee." It is later alleged in the Complaint that in September of 2006 the insurance company of the Council on Aging employed a forensic accountant to examine the accounts and interview Trantham. Id., at ¶¶ 42, 43. Later the accountant met on October 26 with Trantham and told Trantham that such accountant did not believe that the plaintiff had personally gained from any alleged wrong doings. Compl., ¶ 44. It is then alleged that Trantham met with the state prosecutors. Compl., ¶ 44. It is further

alleged in the plaintiff's Complaint that Trantham made the following public statements:

> "Investigating potential cases of embezzlement <u>are</u> different than other crimes. Unlike a robbery or assault where there is evidence of a crime and the challenge is finding who did it, embezzlement starts out a mere assumption. An investigation must then show money was not simply poorly managed, but taken out of the agency's coffers." On March 8, 2008, Defendant Trantham also stated, "It was at this time that it was discovered that the money that had been used in other capacities. After reviewing these transfers, it was determined that they had not been approved by the Unmet Needs Committee". On August 9, 2006, Defendant Trantham stated, "After a few months of following the paper trail, investigators were able to cobble together two separate bank accounts that would point to embezzlement, according to Detective Tyler Trantham of the Waynesville Police Department."

Compl., ¶ 72(c). These allegations do not constitute plausible allegations that Trantham violated any constitutional right of the plaintiff. Rather, Trantham took information that he had received from Celesa Willett to the state prosecutors. He later, in October of 2006, took information from the CPA to the state prosecutors. Taking such allegations as true, there is nothing in such alleged conduct that would support a constitutional claim. In regard to the statements made by Trantham, he describes how investigating embezzlement cases is different from investigation other crimes. He allegedly made a statement on March 8, 2008, that transfers of money had not been approved by the Unmet Needs Committee, a statement that was made over six months after the criminal charges had been dismissed. He is alleged to have made

a statement on August 9, 2006, that "investigators were able to cobble together two separate bank accounts that would point to embezzlement." The plaintiff's name is never mentioned in any of these comments. There is simply no constitutional violation alleged and any reasonable official could have believed that, if placed in the position of Trantham, such conduct would be lawful.

In analyzing the issue with respect to the state prosecutors, the undersigned has reviewed the plaintiff's Complaint to see what statements these defendants allegedly made to the press. As referenced previously, the Complaint does not describe whether the alleged statements made by the state prosecutors to the press were made in court and thus protected by absolute immunity, or whether they made as a part of press conferences called by the prosecutor defendants and which are not protected by absolute immunity, but which may be protected by qualified immunity. Considering the Complaint in the light most favorable to the plaintiff and for the purpose of considering these motions, the undersigned has considered the statements as if they were made as a part of press conferences called by the state prosecutors. In paragraph 72(a), the plaintiff alleges as follows:

> a.    Defendant Bonfoey stated on November 8, 2007 that "Successfully striking this evidence left District Attorney Bonfoey with no case, he said." Bonfoey also stated, "Without evidence of fraudulent intent, this case cannot be sustained, and a dismissal is the appropriate action to take." This statement was

made on November 9, 2007.  Bonfoey also stated on November 9, 2007 "The case was never about the Defendant converting the funds to her own wrongful personal use.  The allegations were that the defendant disregarded the conditions limiting the use of funds received by the Council on Aging, and then those funds were misapplied for another use of the Council on Aging." Bonfoey also stated, "Bonfoey stated he was not surprised, however, that the Grand Jury found all 14 Bills to have enough merit for a trial."

In paragraphs 46 and 72(b), the plaintiff alleges as follows:

46.    On December 20, 2006, in the Smoky Mountain News, Defendant Moore was quoted as saying in reference to the Plaintiff "Embezzlement is using money for, some purpose other than which she received it, It doesn't have to be for her own use. Moore said".

72(b).  Defendant Moore stated on August 9, 2006, "We don't submit cases to the Grand Jury unless we think there is sufficient evidence".   Moore also stated in December 2006, "Money doesn't have to be missing for embezzlement to have occurred. Embezzlement is using money for some purpose other than which she received it.  It doesn't have to be for her own use" Moore said.  This statement was on December 20, 2006.  Moore also stated that, "Mathis was not supposed to spend money from the account without permission of the Unmet Needs Committee, and she signed an agreement to that effect that spelled out terms and conditions of the account".

It appears the statements that were made as described in paragraph 72(a) were

made by the Defendant Bonfoey at a time when he was explaining why he dismissed

the charges against the plaintiff.  While not entitled to absolute immunity for such out

of court statements, the court finds that a reasonable prosecutor could believe that this conduct was lawful and reasonable and that no constitutional right of the plaintiff was violated. While the statements attributed to Defendant Moore appears to reflect a misapprehension of the law and the facts regarding the accounts, a reasonable prosecutor could have believed his conduct in making such public statements was lawful regardless of his alleged errors. The undersigned finds that no constitutional right of the plaintiff was violated by these statements.

In total, qualified immunity applies to both the town defendants and also to the alleged statements made to the press by the state prosecutors.


## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendants Michael Bonfoey's and James H. Moore, Jr.'s Motion to Dismiss (#3) be **ALLOWED,** that defendants Tyler Trantham's and the Town of Waynesville's Motion to Dismiss (#5) be **ALLOWED**, and that this action be dismissed in its entirety.


The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and

recommendation contained herein must be filed within **fourteen** (**14**) days of service of same.  Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: December 4, 2009

Dennis L. Howell
United States Magistrate Judge